IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Christina Nelin,                          )
                                          )
    Plaintiff,                          )
                                          )
                                          )
    v.                                  )          No. 26 C 353
                                          )
                                          )
Zante of Orland, Inc.,                    )
                                          )
    Defendant.                          )

Memorandum Opinion and Order

Plaintiff Nelin has filed suit against her former employer, Zante of Orland, Inc. ("Zante"), alleging discrimination due to her disability. Before me is Zante's partial motion to dismiss. For the reasons that follow, I grant that motion.

**I.**

I draw these facts from Nelin's second amended complaint.[1] Nelin worked from June 2022 until November 2025 as a manager at Zante.[2] For most of that time, and for the twenty years leading up

---

[1] For present purposes, I take them as true. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

[2] No party has mentioned what Zante of Orland is. While beyond the scope of my judicial notice, I can inform the curious reader that the Internet, at least, would suggest that Zante may have been a sports bar.

1

to November 2025, Nelin suffered from "chronic and severe pain in her neck, shoulders, and upper and lower back caused by the size of her breasts." ECF 24 at 3. Nelin's condition limited her ability to engage in major life activities "such as lifting, bending, reaching, standing, walking, sitting, sleeping, and working for periods of time." *Id.* It also caused her "difficulty standing for prolonged periods." *Id.*

To alleviate her condition, Nelin scheduled a breast reduction surgery for November 12, 2025. Nelin told Zante's owners, Danny and Tony Pappas, as well as her manager, Megan Garcia, about the appointment, and requested three weeks of leave to have and recover from the surgery. That group of people approved the time off, and Nelin underwent the procedure as scheduled.

On November 17, 2025, during Nelin's three weeks of leave, Garcia and the Pappases called her and fired her. They cited poor work performance as the reason for the termination, but they also commented on Nelin's surgery, saying "'Good thing you got your tits done.'" *Id.* at 4. Prior to taking her leave, Nelin had never been cited for poor performance, and she had received a merit pay increase just a few months prior.

In response to the firing, Nelin filed charges with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission. The EEOC issued Nelin a right to sue letter

and she filed this lawsuit. The first six counts of the second amended complaint (the "complaint") come in pairs, with the first of each falling under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the second falling under the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.* Counts I and II allege disparate treatment, Counts III and IV allege a failure to accommodate, and Counts V and VI allege retaliation. Count IX[3] alleges interference with Nelin's rights under the Family and Medical Leave Act. Pending before me is Zante's motion to dismiss the first six counts.

## II.

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Once I have disregarded conclusory statements and "[t]hreadbare recitals of the elements of a cause of action," I ask whether the complaint presents "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While I conduct that inquiry, I take the facts in the complaint as

---

[3] Nelin withdrew Counts VII and VIII when she filed her second amended complaint.

true and draw all reasonable inferences for the plaintiff. *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017).

### III.

The ADA prohibits employers from discriminating against, retaliating against, or failing to reasonably accommodate disabled employees because of their disabilities. 42 U.S.C. § 12112(a). Under the ADA, "disability" means, *inter alia*, "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A).

A disparate treatment claim under the ADA requires "proof (1) plaintiff was disabled; (2) plaintiff was qualified to perform essential functions [of her employment] with or without reasonable accommodation; and (3) plaintiff's disability was the 'but for' cause of [the] adverse employment action," in the sense that the employer was motivated by the disability. *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019).

The easiest way to prove that third factor is to catch an employer explicitly stating their motives, but where one fails to

do so, plaintiffs can plead discrimination in two ways. The first is by presenting circumstantially suspicious facts, including "(1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; [or] (3) evidence that the employer offered a pretextual reason for an adverse employment action," like the timing of that action. *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011).

And the second is by presenting facts about 'comparator' employees under what is known as the *McDonnell Douglas* framework, after *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[4] There, the plaintiff must show that (1) she was meeting her employer's legitimate expectations; (2) she suffered an adverse employment action; and (3) similarly situated employees without a disability were treated more favorably.[5] *Dickerson v. Bd. of*

---

[4] *McDonnell Douglas* dealt with Title VII, but its framework has been imported to the ADA context. *See*, *e.g.*, *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 588 (7th Cir. 2011).

[5] Once a plaintiff has made out these facts under the *McDonnell Douglas* framework, there follows a series of burden shifts, but that applies later on; at the pleading stage, the plaintiff need only establish a *prima facie* case. *See Dickerson*, 657 F.3d at 600–01.

*Trustees. of Cmty. College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011).

Two more tests govern failure to accommodate and retaliation claims. To make out the former, a plaintiff must plead facts establishing that "(1) plaintiff was a qualified individual with a disability; (2) defendant was aware of [her] disability; and (3) defendant failed to accommodate [her] disability reasonably." *Scheidler*, 914 F.3d at 541. To make out the latter, a plaintiff must show that (1) she was disabled under the ADA; (2) she engaged in statutorily protected activity; (3) she suffered an adverse employment action; and (4) there was a causal connection between her activity and the adverse action. *Id.* at 544.

And then finally, while there are both ADA and IHRA theories at issue, I need not lay out a second set of tests, because courts analyze IHRA claims under the same framework as the ADA. *Winkelman v. Cont'l Nursing & Rehab. Ctr., LLC*, 2020 WL 5763813, at *4 n.8 (N.D. Ill. Sept. 28, 2020) (citing *Teruggi v. CIT Grp./Cap. Fin., Inc.*, 709 F.3d 654, 659 (7th Cir. 2013)).

Nelin's complaint fails each of the above tests because, while it is undisputed that she suffered an adverse employment action, she has not made out that she is disabled under the ADA.

## A. Disability

Nelin writes that she suffered "chronic and severe pain in her neck, shoulders, and upper and lower back," and states that her condition "substantially limited major life activities, such as lifting, bending, reaching, standing, walking, sitting, sleeping, and working for periods of time." ECF 24 at 3. But this is simply reciting, verbatim, the statutory language from 42 U.S.C. § 12102, leaving out those words, like "seeing," that would not likely connect to back pain. Nowhere does Nelin describe how her back pain affected her ability to do any of these activities and, because Nelin never describes what her work entailed (it is unclear what kind of business Zante is, for instance), the reader cannot see how it would affect her employment. This is what the *Iqbal* Court was referring to when it wrote that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S. at 678. If I disregard the purely conclusory language about Nelin's disability, I have nothing left to regard, and that dooms all six counts at issue.

But in the interest of pushing any future pleadings in the right direction, I will go on to note that her complaint also fails to make out other elements of two of her sets of purported claims.

## B. Disparate Treatment

Nelin has at least made out that her disability, specifically in the need to leave work for surgery, was a but-for cause of her firing. She does this by pleading that the timing of that firing, along with commentary on the phone call about the surgery, was suspicious. *See Diaz*, 653 F.3d at 587. But Nelin has not shown that she was "qualified to perform essential functions with or without reasonable accommodation." *Scheidler*, 914 F.3d at 541. This is because Nelin never explained what her job was or what its essential functions were. All she has offered was that "[a]t all times relevant, Plaintiff was qualified to perform the essential functions of her position, with or without reasonable accommodation." ECF 24 at 3. This falls below the low bar of notice pleading. *Iqbal*, 556 U.S. at 678.

## C. Failure to Accommodate

Nelin's problem here is that although she has pled that "defendant was aware of [her] disability," she has not pled that "defendant failed to accommodate [her] disability." *Scheidler*, 914 F.3d at 541. The only accommodation Nelin has identified is the three weeks' leave she requested to have surgery. And Zante granted her that leave (obviously, it then terminated her, but that termination would fall under either disparate treatment or retaliation). *See Aylward v. Hyatt Corp.*, 2005 WL 1910904, at *20

8

(N.D. Ill. Aug. 5, 2005). Nelin writes vaguely in the complaint that Zante should have been aware of some kind of accommodation she would need after returning to work, but does not specify what that might be, and in any case "the ADA does not provide a cause of action based on an anticipated but unrealized adverse employment action." *Id.*

### D. Retaliation

Nelin comes closest to stating a claim for retaliation. Zante protests that simply disclosing a disability and requesting an accommodation does not constitute protected activity, but that is incorrect. A party asserting her rights under the ADA engages in protected activity. *Preddy v. Bartholomew Consolidated School Corp.*, 799 F.3d 806, 814-15 (7th Cir. 2015). And, as in her disparate treatment theory, the timing of her firing—right in the middle of the leave she requested as an accommodation—would be suspicious enough to meet the requirements of Rule 12(b)(6) if Nelin had successfully pled a disability.

### IV.

Counts I-VI are dismissed. As this is the first dismissal—although it is already the second amended complaint—it is without prejudice. Inasmuch as is possible within the confines of Rule 11, Nelin has twenty-one days to amend her complaint. If she chooses

not to amend within twenty-one days, Counts I-VI will be dismissed with prejudice.

ENTER ORDER:

_____

**Elaine E. Bucklo**
United States District Judge
Dated: July 9, 2026